**Roy Lynn CAMPBELL, Jr., Appellant,**

v.

**The STATE of Texas.**

No. 552–97.

Court of Criminal Appeals of Texas, En Banc.

Nov. 10, 1999.

---

Terry Yates, Houston, for appellant.

Jeffrey L. Van Horn, Asst. State's Atty., Austin, Carol M. Cameron, Asst. Dist.

Atty., Houston, Matthew Paul, State's Atty., Austin, for the State.

WOMACK, J., delivered the opinion of the Court in which McCORMICK, P.J., KELLER, PRICE, HOLLAND, and KEASLER, JJ., joined, and in parts I, II, III, and V of which MEYERS, MANSFIELD, and JOHNSON, JJ., joined.

## I. Procedural History

The appellant pleaded no contest to theft by deception of property valued at $20,000 or more but less than $100,000. Tex. Penal Code § 31.03(e)(5)(B).[1] The trial court sentenced the appellant to ten years confinement and recommended restitution as a condition of parole. The amount of restitution the trial court recommended was $100,000.

The Fourteenth Court of Appeals upheld the conviction but overturned the restitution recommendation. The court struck the restitution amount as an excessive award that was an abuse of discretion by the trial court. The appeals court held that the $100,000 restitution recommendation exceeded the parameters of the offense because the property-value range for second-degree felony theft was more than $20,000 and less than $100,000. *Campbell v. State*, 942 S.W.2d 738, 740–741 (Tex. App.—Houston [14th Dist.] 1997). The State argues that the property-value range for theft affects only the punishment but

does not limit the restitution amount. We granted the State's petition for discretionary review to resolve the issue.

The appeals court found that the restitution recommendation also violated the requirements of Texas Code of Criminal Procedure article 42.01, section 1(25)[2] because the names of the victims to whom the restitution was to be paid were not stated in the judgment.[3] *Id.* The appeals court remanded the case to the trial court for a determination of the proper amount of restitution as well as the beneficiaries and division of the restitution recommendation. *Id.*

## II. Restitution as a Parole Condition

■ The State claims that the remand order was beyond the power of the Court of Appeals because only the Board of Pardons and Paroles could decide the amount of restitution, if any, the appellant might have to pay. Under this argument, the remand order violated the separation of powers between the courts and the executive branch.

The trial court did not order restitution as a part of the appellant's punishment. The State is correct that under the law in effect at the time of the appellant's offense, *see* Dix & Dawson, 42 *Texas Practice: Criminal Practice and Procedure* section 38.132 (1995), the restitution order was a recommendation to the Board of Pardons and Paroles. Article 42.18, section 8(g)[4] authorized a parole panel to

---

1. Texas Penal Code section 31.03(e)(5)(B) states:

   "(e) Except as provided by Subsection (f), an offense under this section is: ...
   "(5) a felony of the second degree if: ...
   "(B) the value of the property stolen is $20,000 or more *but less than $100,000.*"

   Because the crime for which the appellant was convicted was committed on or before September 1, 1994, the effective date of the revised penal code, unless otherwise indicated, all references to the Texas Penal Code and Code of Criminal Procedure are to the codes in effect at the time the crime was committed. *See* Acts 1993, 73rd Leg., Ch. 900 §§ 1.01, 4.01.

2. "...The judgment should reflect:

   "25. In the event that the court orders restitution to be paid to the victim, a statement of the amount of restitution ordered and:
   "(A) the name of the victim and the permanent mailing address of the victim at the time of the judgment...." TEX.CODE CRIM. PRO. ART. 42.01, § 1(25)(A).

3. Unless otherwise indicated all future references to articles refer to the Code of Criminal Procedure.

4. "The parole panel may include as a condition of parole or mandatory supervision any condition that a court may impose on a probationer under Article 42.12 of this code... ." ART. 42.18 § 8(g).

include as a condition of parole any condition that a court may have imposed on a probationer under article 42.12.[5] Under the statute, it was the responsibility of the Board, not that of the trial court, to set the amount of restitution as a condition of parole within the figure initially established by the district court. *See, e.g., Vargas v. State*, 830 S.W.2d 656, 658–59 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (interpreting article 42.18, section 8(g) to limit the power of the trial court over the Board on a separation-of-powers rationale).

The reference of article 42.18, section 8(g) to article 42.12, section 11(a) leads us to examine the validity of restitution as condition of parole in the same manner as we would the validity of restitution as a condition of probation. Although the trial court did not have the authority to require restitution as a condition of parole,[6] the amount of restitution that is just was fixed by the trial court and may have been used by the parole panel in ordering restitution as a condition of parole. *Cf. Cartwright v. State*, 605 S.W.2d 287, 289 (Tex.Cr.App.1980) (delineating a just amount of restitution as a condition of probation). Therefore, the propriety of the amount of restitution as a parole condition under the former article 42.12, section 11(a)(8) was within the jurisdiction of the appeals court and is amenable to our review without implicating separation-of-powers concerns.[7]

### III. Limits on Restitution Orders

■ Because the Court of Appeals held that the trial court abused its discretion in recommending a restitution amount above the property-value range for second-degree felony theft, we examine the limits of a trial court's discretion in ordering restitution. An abuse of discretion by the trial court in setting the amount of restitution will implicate due–process considerations.

■ The amount of restitution must be just, and it must have a factual basis within the loss of the victim. *See Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Cr.App.1980) (holding that due process requires that evidence in the record must exist to show that the amount has a factual basis); *Thompson v. State*, 557 S.W.2d 521, 525–26 (Tex.Cr.App.1977) (striking a restitution order because the record did not show that the injuries of the victim justified the restitution amount). The appellant stipulated to the amounts that he stole from his victims. The evidence shows that the total monetary loss for nine of the eleven named complainants was $108,324.56. The amount of restitution that the trial court recommended the ap-

---

**5.** At the time of the offense, article 42.12, section 11 read:

"(a) ... Terms and conditions of probation may include, but shall not be limited to, the conditions that the probationer shall:
"(8) Pay his fine, if one be assessed, and all court costs whether a fine be assessed or not, in one or several sums, and make restitution or reparation in any sum that the court shall determine."

Effective September 1, 1993, the 73rd Legislature made the following changes to subsection (a)(8):

"(8) Pay his fine, if one be assessed, and all court costs whether a fine be assessed or not, in one or several sums[, and make restitution or reparation on any sum that the court shall determine];"

Restitution was not, however, abolished. Article 42.307(a), also effective September 1, 1993, provides:

"(a) In addition to any fine authorized by law, the court that sentences a defendant convicted of an offense may order the defendant to make restitution to any victim of the offense. If the court does not order restitution or orders partial restitution under this subsection, the court shall state on the record the reasons for not making the order or for the limited order."

**6.** Under present law, the Board of Pardons and Paroles is required by statute to impose as a condition of parole the amount of restitution that the trial court orders. Art. 42.037(h).

**7.** The enactment of article 42.037 increases the need to guide trial courts in assessing restitution amounts in property crimes. Art. 42.037 (Restitution), *enacted by* Acts 1993, 73rd Leg., ch. 806, § 1, eff. Sept. 1, 1993.

pellant pay as a condition of parole had a factual basis in the record.

■ A trial court may not order restitution for an offense for which the defendant is not criminally responsible. *Gordon v. State*, 707 S.W.2d 626, 629–30 (Tex.Cr.App. 1986) (holding that it would be a denial of due process to order the defendant to pay for costs associated with an offense for which he was found not criminally responsible). Here the appellant stipulated to a list of his victims and the amounts that he had stolen from them. There is no dispute that the appellant was criminally responsible for the thefts to which he pleaded no contest.

■ Another limit on the authority of a trial court to order restitution is that a trial court may not order restitution to any but the victim or victims of the offense with which the offender is charged. *Martin v. State*, 874 S.W.2d 674, 679–80 (Tex. Cr.App.1994) (holding that a restitution order may not compensate all victims of a general scheme to defraud when the defendant was only charged with defrauding one investor). Nor may a trial court, without the agreement of the defendant,[8] order restitution to other victims unless their losses have been adjudicated.[9] *Ex parte Lewis*, 892 S.W.2d 4, 6 (Tex.Cr.App.1994) (citing *Martin*, 874 S.W.2d at 677–78). The restitution recommendation of the trial court in the appellant's case did not attempt to compensate any persons other than the direct victims of the appellant's theft.

However, the judgment did not designate which of his victims were to receive restitution, nor did the judgment specify how the award was to be divided among those victims. The judgment violated article 42.01, section 1(25), which directs that the judgment must reflect the apportion- ment and beneficiaries of any restitution order. We uphold the remand of the case by the Court of Appeals as to the determination of the appropriate division of the restitution recommendation between the victims of the appellant.

### IV. Property–Value Range of Theft as a Limit on Restitution

■ The appellant now calls for this Court to create a new limit on restitution orders. The appellant argues that the amount of restitution that can be ordered for a theft conviction is restricted by the upper limit of the property-value range of theft for which the appellant was convicted. The Court of Appeals struck the trial court's restitution recommendation as an abuse of discretion because it exceeded the "parameters of the verdict." *Campbell*, 942 S.W.2d at 740–41. The court reasoned that second-degree felony theft by definition involves stolen property valued at less than $100,000, so a restitution recommendation in excess of that amount would have been permissible only if the appellant had been charged with first-degree felony theft. *Id.* at 740. We shall reverse.

The Court of Appeals cited two cases in support of its decision to overturn the restitution recommendation, *Green v. State*, 880 S.W.2d 797 (Tex.App.—Houston [1st] 1994, no pet.), and *Hefner v. State*, 735 S.W.2d 608 (Tex.App.—Dallas 1987, pet. ref'd). *Green* involved a sufficiency challenge to a restitution order. In upholding the restitution amount, *Green* cited *Hefner* for the requirement that restitution must be "within the parameters of the verdict." *Green*, 880 S.W.2d at 802. The *Green* court referenced by that phrase *Hefner*'s requirement that a restitution order may not exceed the property-value range for the offense of which the jury

---

8. Whether a defendant who enters a plea-bargain agreement to pay restitution to other victims, has "waived her right to complain of the restitution order," was not decided in *Martin*. *See Martin*, 874 S.W.2d at 675 n. 3. The issue was not raised in this case.

9. Losses caused by unadjudicated offenses that a defendant has admitted and requested the court to take into account, *see* Tex. Penal Code § 12.45, may be regarded as adjudicated. The question is not before us today.

found a defendant guilty. *See Hefner*, 735 S.W.2d at 614.

In *Hefner*, the defendant was convicted of third-degree felony theft. *Hefner*, 735 S.W.2d at 614. The jury found that the defendant was guilty of theft of more than $750 and less than $20,000. *Id.* But the trial court ordered restitution of $35,500. *Id.* at 613. The appeals court struck the restitution order as outside the property-value range for third-degree felony theft although a factual basis existed in the record for the $35,500 order. *Id.* at 614. The court relied upon our holding in *Gordon*, 707 S.W.2d at 629–30, to support its decision. *Id.* at 613–14.

In *Gordon*, the defendant was a former Harris County Deputy Sheriff who was ordered to pay restitution that covered the victim's funeral expenses. *Gordon*, 707 S.W.2d at 628. The victim died of injuries inflicted on him during a custodial interrogation. *Id.* Gordon was found guilty of violating the civil rights of a prisoner, but the jury found that he had not contributed to the death of the victim because he had only pulled the victim's hair, and they recommended a probated sentence. *Id.* This Court overturned the restitution order for funeral expenses stating, "In light of the jury's finding he had no criminal responsibility for complainant's death, however, that [sic] mere presence was not a sufficient factual basis for the trial court to order appellant to pay complainant's funeral expenses." *Id.* at 629.

The interpretation of *Gordon* in *Hefner* is erroneous. In *Gordon*, there was no factual basis in the record for the trial court's order of restitution for causing the victim's death. The trial court as a matter of law could not have imposed restitution based on conduct that had no basis in the record. *See Gordon*, 707 S.W.2d at 628 (finding that restitution for funeral expenses had no basis in the record); *see also Cartwright*, 605 S.W.2d at 289 (hold-

ing that restitution must have a factual basis in the record). In *Hefner* and in the case at hand, there existed in the record a factual basis for the amount of restitution imposed by the trial court. Judge Johnson's concurrence maintains that in *Hefner* the appellant was found not criminally responsible for the restitution assessed, yet admits that the Court of Appeals expressly found a factual basis for the award that the trial court originally ordered. *Post*, at 703; *Hefner*, 735 S.W.2d at 614. One is never "criminally responsible" for an amount of restitution. Instead, criminal responsibility is assessed for the conduct that forms the basis for the judge's discretionary award of restitution. In *Hefner* the trial court should have been allowed to make its own finding as to the proper amount of restitution once criminal responsibility was assessed for the conduct that underlay the award. Conviction by the jury for a certain property-value does not restrict the restitution amount that the trial judge might find to be the justified amount.

At common law, the power to impose restitution rested with the judge. *See Green v. State*, 880 S.W.2d 797, 802 n. 7 (Tex.App.—Houston [1 Dist.] 1994). Since then, the authority to impose restitution has remained by statute with the judge. *See supra* note 5 and accompanying text. This does not mean that the judge is free to impose any amount of restitution independent of the trial record. The jury's factual findings are part of the record, so the trial judge should consider those findings when determining the just amount of restitution. Given the clear statutory charge to the trial judge to determine the just amount of restitution, however, the judge may determine from the record that the actual loss of the victim exceeds the property-value range of which the jury convicts the defendant.[10] Although the

10. The notion that the judge may consider facts on a burden of proof different than that required for the jury find guilt is not foreign to our jurisprudence. For example, in sentencing a defendant after the jury finds guilt, the trial judge may consider, upon proof by a

current restitution statute is not before us, this interpretation of its predecessor has the added benefit of comporting with the current statute and providing guidance to the lower courts on the wide range of appropriate considerations available to the trial judge in awarding restitution.[11]

*Hefner* limited the amount of restitution to the property-value range as reflected in the verdict and the judgment, but this limit confuses the property-value range of a particular grade of theft with the requirement that restitution have a factual basis in the record. *See Cartwright,* 605 S.W.2d at 289 (holding that restitution must have a factual basis in the record). Usually the amount charged in the indictment will indicate the limits of the restitution amount, but only because the amount charged in the indictment normally would reflect the loss of the victim. Only when the State chooses to charge a lesser property value than the actual loss of the victim, or when the judge determines from the record that the actual loss of the victim exceeds the property-value range of which the jury convicts the defendant, could the amount of restitution exceed the amount charged in the theft indictment.

The only limits on the authority of a trial court to order restitution that we have recognized are those set out above in Part III. Restitution must have a factual basis within the loss of the victim that is reflected in the record. *Cartwright,* 605 S.W.2d at 289. Restitution must be for a crime for which the offender is criminally responsible. *Gordon,* 707 S.W.2d at 629–30. If restitution is ordered for third parties, the third-party losses must be adjudicated. *Lewis,* 892 S.W.2d at 7. The restitution recommendation in the appellant's case satisfied these restrictions.

We have characterized the property-value range for theft as a jurisdictional element rather than an element of the offense itself.[12] *Cheney v. State,* 755 S.W.2d 123, 128 n. 6 (Tex.Cr.App.1988). An allegation in a theft indictment of the value of the stolen property does not describe the factual basis of a restitution award, for it is not "descriptive further than as it affects the question as to whether the offense be a felony or a misdemeanor." *Houston v. State,* 98 Tex.Crim. 280, 286, 265 S.W. 585, 588 (1924) (Op. on Mot. for Reh'g).[13] It does not serve to supplant the limit found

preponderance of the evidence, evidence as to the circumstances of the offense. *See* ART. 37.07.

**11.** The current restitution statute directs the trial judge to look at a broad range of considerations when determining a just amount of restitution. "The court, in determining the whether to order restitution and the amount of restitution, shall consider:

(1) the amount of the loss sustained by *any* victim as a result of the offense;
(2) the financial resources of the defendant;
(3) the financial needs and earning ability of the defendant and the defendant's dependents; and
(4) *other factors* the court deems appropriate."
ART. 42.037(c)(1)-(3) (1999) (emphasis added).

**12.** Many other Title 7 offenses in the present penal code have value ranges attached to them that determine the penalty grade for that offense. *See* TEX. PENAL CODE §§ 28.03(b) (Criminal Mischief); 28.07(e) (Interference

with Railroad Property); 28.08(b) (Graffiti); 31.04(e) (Theft of Service); 32.23(e) (Trademark Counterfeiting); 32.33(c), (e) (Hindering Secured Creditors); 32.34(f) (Fraudulent Transfer of a Motor Vehicle); 32.35(e) (Credit Card Transaction Record Laundering); 32.441(e) (Illegal Recruitment of an Athlete); 32.45(c) (Misapplication of Fiduciary Property or Property of Financial Institution); 32.46(b) (Securing Execution of Document by Deception); 33.02(b) (Breach of Computer Security); 33A.02(b) (Unauthorized Use of Telecommunication Service); 33A.04(b) (Theft of Telecommunications Service); 34.02(e) (Money Laundering); 35.02(d) (Insurance Fraud). One Title 8 offense in the present penal code also uses a value range to determine the grade of the offense. *See* TEX. PENAL CODE § 39.02(b) (Abuse of Official Capacity).

**13.** Under the present penal code and the one in effect at the time the appellant committed his crime, the value of stolen property also affects the grade of the misdemeanor or felony offense. *See* TEX. PENAL CODE § 31.03(e).

in the requirement that the restitution amount must have a factual basis within the loss of the victim that is supported in the record. *Cartwright*, 605 S.W.2d at 289.

If we let the interpretation of *Gordon* in *Hefner* stand, it could lead to consequences that are contrary to public policy. If the State desired to agree to a plea bargain that would result in a conviction for a lesser-included offense but was contingent upon an offender's making full restitution, the rule of *Hefner* would prohibit this plea agreement. This would undermine the clear policy of the state to restore victims financially. *See* articles 42.01, section 1(25); 42.037; 42.12, section 11(a); 42.18, section 8(g); 56.311 (1995). It would also be contrary to the state's policy to encourage plea bargains. *See generally Smith v. State*, 898 S.W.2d 838, 844 n. 6 (Tex.Cr.App.1995) (opining that plea bargaining is essential to the administration of justice in America). An offender would not be permitted to expressly waive the restitution limit as a part of his plea bargain, *cf. Feagin v. State*, 967 S.W.2d 417, 419 (Tex.Cr.App.1998) (stating that "a plea bargain ordinarily involves an express waiver of many of the defendant's rights"), because *Hefner* held that the limit is a substantive limit on the trial court in ordering restitution. *See Hefner*, 735 S.W.2d at 614 (holding that "the trial court's order ... cannot stand").

Indeed, in the appellant's case it is unclear whether his no-contest plea was a non-negotiated plea or was the result of a plea bargain. *Cf. Lewis*, 892 S.W.2d at 7 (McCormick, P.J., dissenting) (arguing that the appeals court should not have overturned an order of restitution to third parties whose losses were unadjudicated because the record did not show that the restitution was not part of a plea agreement). The appellant waived his right to have a court reporter make a record of the proceedings. Without a reporter's record, we are unable to determine whether the evidence included in the clerk's record is all of the evidence that the State introduced at the plea hearing to authorize the appellant's conviction. *See* article 1.15.[14] The stipulated evidence in the clerk's record reflects that the appellant stole amounts that totaled within the value range for first-degree felony theft, but he pleaded no contest to a charge of second-degree felony theft without an agreed recommendation of punishment. It is possible that the appellant's case was an example of a plea bargain for a lesser degree of theft contingent upon full restitution. Because no reporter's record of the plea hearing exists, we are unsure whether this danger of the rule of *Hefner* has been realized.

The rule of *Hefner* could also restrict restitution orders in cases involving offenses that do not have attached value ranges. The appellant counters that the theft statute represents an unusual example in the penal code in that few crimes have monetary values attached to the punishment grades.[15] The appellant correctly asserts that the legislature intended the property-value range of theft to determine the punishment, *see* Texas Penal Code sections 12.02–.04, 12.21–.23, 12.31–.35; *Steel v. State*, 153 Tex.Crim. 88, 89, 217 S.W.2d 857, 858 (1949), but that structure does not dictate the appropriate amount of restitution. If it did so dictate, then trial courts would not be permitted to require restitu-

---

14. "No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same." ART. 1.15.

15. Actually, the norm among property crimes is to grade the offense by the monetary value of the object of the crime. *See* note 8, *supra*.

tion in a theft conviction that was a plea bargain from another property offense that does not have an attached value range. *See, e.g.,* Texas Penal Code section 29.02 (Robbery). Nor would trial courts have guidance in how to order restitution in property crimes that do not have attached value ranges. *See, e.g.,* Texas Penal Code section 28.02 (Arson). The legislature never intended to restrict a trial court from ordering a justified restitution amount simply because the State did not charge the full amount. The rule limiting trial courts in setting restitution amounts announced in *Hefner* is unsound.

## V. Due Process Challenge of Lack of Notice

The appellant argues that the trial court violated the requirements of the Due Process Clause by recommending a restitution amount that exceeded the property-value range of second-degree felony theft. The appellant argues that the charging instrument on its face did not provide him with adequate notice of what punishment he confronted because it did not state that he would have to pay restitution in an amount above the property-value range for second-degree felony theft.

■ The amount of possible restitution is not included in the indictment of any crime. Instead, the particular facts of each case determine the just amount of restitution. An indictment must provide the accused with enough notice to defend against the charges contained within. *State v. Mays,* 967 S.W.2d 404, 406 (Tex. Cr.App.1998); *Adams v. State,* 707 S.W.2d 900, 901 (Tex.Cr.App.1986); article 21.02(7).[16] The indictment in the appellant's case satisfied this notice requirement and gave the appellant full notice of the extent of the theft charges against him. The complaint of the appellant is best stated as a claim that the trial court did not make him aware of the full ramifications of his no-contest plea in that he was unaware that he was subject to pay a restitution

amount that exceeded the property-value range for second-degree felony theft.

■ For the appellant's claim to raise reversible error, his complaint would have to be that his no-contest plea was not voluntarily made. The admonishment of the trial court usually assures that an offender's plea is voluntary with respect to the range of punishment. *See Fuentes v. State,* 688 S.W.2d 542, 544 (Tex.Cr.App. 1985) (characterizing the admonishment on the range of punishment as relevant to the voluntariness of the plea). A total failure of the trial court to admonish the defendant concerning the range of punishment is reversible error. *Walker v. State,* 524 S.W.2d 712, 713–14 (Tex.Cr.App.1975).

■ However, the review of the voluntariness of a no-contest plea should not be based solely on questions and answers in the statement of facts but on the record as a whole. *Cf. Martinez v. State,* 981 S.W.2d 195, 197 (Tex.Cr.App.1998) (holding that the voluntariness of a guilty plea is determined from the entire record). *See also* article 27.02(5) (providing that the legal effect of the plea of nolo contendere is the same as that of a plea of guilty). The trial court admonished the appellant that the felony offense of second-degree theft carried with it a range of punishment of two to twenty years confinement and an optional $20,000 fine. The appellant was not admonished that he also faced a restitution order.

■ The appellant argues that he was not notified of the possibility of restitution. However, in this case the appellant cannot make the claim that he entered his plea "without understanding the consequences of such plea." *Id.* The appellant entered a written no-contest plea without a sentencing agreement by the state. In the waiver form that both the appellant and his attorney signed, he asked "the court to grant deferred adjudication with conditions to include restitution to all victims of this

---

16. "The offense must be set forth in plain and intelligible words." Art. 21.02(7).

scheme, whether pled in the indictment or not." Although the trial court did not grant deferred adjudication, it did grant the appellant's request that he provide restitution to his victims. Through his request for restitution, the appellant showed that he clearly understood that restitution to victims not named in the indictment could be part of the judgment. The appellant cannot now complain that he had no notice that he was exposed to restitution since he requested that the trial court award restitution to all his victims.

■ Similarly, the appellant cannot complain that he was not on notice that the restitution order might exceed the property-value range for second-degree felony theft. The appellant stipulated to the amounts that he stole from his victims listed in the indictment. These amounts totaled above the maximum value for second-degree felony theft. Therefore, the appellant understood that he was asking for a restitution order that exceeded the maximum value of second-degree felony theft. The appellant's claim that he was not given the notice required by the Due Process Clause is without merit.

The judgment of the Court of Appeals as to the amount of the restitution recommendation is reversed, and the judgment of the district court is affirmed. The judgment of the Court of Appeals remanding the case to the trial court for a determination of the beneficiaries and division of the restitution recommendation is affirmed.

Affirmed in part, reversed in part.

JOHNSON, J., filed a concurring opinion, in which MEYERS and MANSFIELD, JJ., joined.

JOHNSON, J., filed a concurring opinion in which MEYERS and MANSFIELD, JJ., joined.

I join the majority opinion as to parts I, II, III and V. However, I concur only in the judgment as to part IV, which I believe misreads the relevant case law and is likely to cause confusion in the lower courts.

I agree that, on the facts of the instant case, the trial court was not limited in the amount of restitution that it ordered by the upper limit of the category of theft to which the defendant plead and was convicted. In holding to the contrary, the Court of Appeals stated that "the amount of restitution must be within the parameters of the verdict." *Campbell v. State*, 942 S.W.2d 738, 740 (Tex. App.—Houston [14th Dist.] 1997). As support, it cited *Green v. State*, 880 S.W.2d 797, 802 (Tex. App.—Houston [1st Dist.] 1994, no pet.), which cited *Hefner v. State*, 735 S.W.2d 608, 614 (Tex. App.—Dallas 1987, pet. ref'd). *Hefner*'s ruling is based on *Gordon v. State*, 707 S.W.2d 626 (Tex. Crim. App. 1986). The majority finds that the "root" of the Court of Appeals' error is *Hefner*, which, after a lengthy discourse, it then disavows. *Ante*, at 698–701. However, in my opinion, *Hefner* was correctly decided, was misinterpreted by the *Green* court, and is inapplicable to the instant case.

In *Gordon*, the defendant, a former sheriff, was charged with violating the civil rights of a prisoner. The indictment contained four paragraphs alleging offenses from causing the prisoner's death through lesser-included offenses down to pulling the prisoner's hair. The jury found appellant guilty only of pulling the prisoner's hair and acquitted on all other charges. *Id.* at 628. The trial court then ordered him to pay restitution to the victim's family of up to $4,000 for funeral expenses. *Id.* This Court held that the trial court erred in ordering the defendant "to make restitution for losses caused by an offense for which the jury had found that he was not criminally responsible." *Id.* at 630.

In *Hefner*, the jury, given a choice on the verdict form of second-degree felony theft (theft over $20,000) and third-degree felony theft (theft between $750 and $20,000), convicted the defendant only of third-degree felony theft, thereby finding him not guilty of theft over $20,000. *Hefner,*

735 S.W.2d at 613–614. The trial court probated the defendant's sentence and, as a condition of his probation, ordered him to pay $35,500 in restitution. *Id.* at 610. The defendant complained on appeal, *inter alia,* that the trial court erred in ordering him to pay $35,500 in restitution. *Id.* The Court of Appeals found that although there was a factual basis from which the trial court could determine that $35,500 was approximately the amount required as restitution, *Gordon* required a finding that the amount of restitution ordered by the trial court was error because appellant had been acquitted of the higher charge and was therefore not criminally responsible for the higher amount. *Id.* at 614.

The majority initially attempts to distinguish *Hefner* from *Gordon* by arguing that in *Gordon* there was no factual basis in the record for the trial court's order of restitution. Yet, only a sentence later, it cites *Gordon* for the proposition that because the defendant was acquitted of having caused the victim's death, the trial court was prohibited from imposing restitution based on conduct for which the defendant had been found not criminally responsible. *Ante,* at 698. It then goes on to state that because the defendant in *Hefner* was convicted of third-degree felony theft, "the trial court should have been allowed to make its own finding as to the proper amount of restitution once criminal responsibility was assessed for the conduct that underlay the award" and that "[c]onviction by the jury for a certain property-value offense does *not* restrict the restitution amount that the trial judge might find to be the justified amount." *Ante,* at 698. Yet, as in *Gordon,* it was neither the "factual basis" for the restitution nor the jury's conviction that was at issue in *Hefner,* but its *acquittal* of Hefner of the offense with the higher value limits. That is, the jury specifically found Hefner *not* guilty of

theft over $20,000. Although the trial court and the appeals court found that a "factual basis" existed in the record for the $35,500 order, the *jury* had, by its verdict of acquittal, found that such a factual basis did *not* exist. To order restitution of $35,500 was, therefore, to invalidate the jury's verdict without adequate cause, and indeed, to pick and choose those parts of the verdict with which the court agreed. As we stated in *Gordon,* 707 S.W.2d at 629, to allow such a "circumvention of the jury's verdict ... would allow punishment to be imposed for a crime of which appellant was acquitted." Such punishment is clearly prohibited by both of our constitutions.

By way of contrast, in *Green* the defendant was ordered to pay restitution in the amount of $19,520, which was "within the parameters" of the offense for which he was convicted by a jury, theft over $750.00 and under $20,000.00. *Green,* 880 S.W.2d at 798–799, 802. The defendant appealed, not on exceeding the statutory limits as is the case here, but on sufficiency of the evidence in the record to support the amount assessed. *Id.* at 802. The *Green* court's statement that *Hefner* stands for the proposition that "[the] amount [of restitution] must also be within the parameters of the verdict" (*id.* at 802), is *dicta* and is not supported by the text of *Hefner.* Nowhere does the word "parameter" appear in *Hefner;* the blame for that phrase lies with the *Green* court. *See Green,* 880 S.W.2d at 802.[1] Instead, *Hefner,* like *Gordon,* stands for the proposition that a defendant may not be ordered to make restitution for losses caused by an offense of which a jury acquitted him. *Green,* however, is clearly distinguishable from *Gordon, Hefner* and the instant case on both the facts and the law, and is not applicable to the instant case.

---

1. The statements in *Hefner* which are closest to the misinterpretation by the *Green* court are, "However, the *verdict* and the *judgment* in the present case indicate that Hefner was acquitted of the offense of theft of greater

than $20,000. Accordingly, the trial court abused its discretion in ordering restitution in an amount greater than $20,000." *Hefner,* 735 S.W.2d at 614 (emphasis in original).

In contrast to *Gordon* and *Hefner*, in the instant case appellant was allowed to plead to a lesser charge and stipulated to the amounts that he stole from his victims, an amount which exceeded the "parameters" of the offense to which he plead. The state did not assert its right to pursue the greater offense and, at the least, acquiesced in appellant's plea to the lesser charge. This is very different from a jury verdict of acquittal of the greater offense. Under these circumstances, the trial court did not err in ordering restitution based on the stipulated amounts, even if those amounts totaled more than the upper limit of the value range of theft under which appellant plead. On the law and the facts, *Gordon* and *Hefner* are inapplicable to the instant case.

The majority asserts that one is never " 'criminally responsible' for an amount of restitution," but only "for the conduct that forms the basis for the judge's discretionary award of restitution." *Ante,* at 698. This is logically unsupportable, as the only difference in "the conduct that form[ed] the basis for the judge's discretionary award of restitution" between the conviction and acquittal in *Hefner* was the amount of the theft. The majority's statement that "[c]onviction by the jury for a certain property value does not restrict the restitution amount that the trial judge might find to be the justified amount" authorizes contravention of the jury's verdict of acquittal by a trial court when the court finds "a factual basis" for a higher amount. The trial court must do more than "consider" the jury's findings of fact which are implied in the verdict of acquittal; the jury is, after all, the finder of fact, including the property value proved. The trial court is bound by this verdict and the implied findings of fact, and may not substitute its own conclusions for those of the jury. *See* U.S. Const. amends. V & XIV; Tex. Const. art. I, § 14.

In disavowing *Hefner,* rather than *Green*'s misapplication and misinterpretation of *Hefner,* the majority has sent con-fusing signals to our lower courts. As noted above, *Gordon* and *Hefner* are legally (and factually) indistinguishable. In both *Gordon* and *Hefner,* the defendant was tried by a jury, acquitted of a greater offense, and convicted of a lesser offense. In both, the trial court was held to have erred by ordering restitution for the greater offense. Now, by our disavowal of *Hefner* but not *Gordon,* the lower courts will be in a quandary as to the correct approach to restitution in this area of the law. Such confusion need not be introduced into our jurisprudence.